

FILED
IN OPEN COURT

MAY 1 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

JERRY CHUN SHING LEE,

Defendant.

Criminal No. 1:18-cr-89
(Hon. T. S. Ellis III)

## STATEMENT OF FACTS

The United States and the defendant, JERRY CHUN SHING LEE (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.     From on or about April 26, 2010 to on or about January 15, 2018, in the Eastern District of Virginia and elsewhere, including locations outside of the jurisdiction of any particular state or district, the defendant did unlawfully and knowingly conspire with others to communicate, deliver, and transmit to a foreign government, to wit: the Government of the People's Republic of China ("PRC"), and representatives, officers, and agents thereof, directly and indirectly, documents, writings and information relating to the national defense of the United States, with the intent and reason to believe that such documents, writings and information were to be used to the injury of the United States and to the advantage of a foreign government, namely, the Government of the PRC.

2.     The defendant is a naturalized United States citizen who principally resided in Hong Kong during the timeframe of the conspiracy.   He entered duty with the

Central Intelligence Agency ("CIA") in 1994. The CIA's headquarters are in Langley, Virginia, which is within the Eastern District of Virginia. As a CIA case officer, the defendant worked in various overseas locations, including China.

3. In the course of his employment with the CIA, the defendant obtained and maintained a Top Secret security clearance. In addition to his Top Secret security clearance, the defendant also obtained and maintained access to Sensitive Compartmented Information ("SCI"). The U.S. government entrusted the defendant with access to sensitive government materials, including classified documents, materials, and information related to the national defense that were closely held by the government.

4. The defendant resigned from the CIA in July 2007.

5. On July 13, 2007, prior to leaving government service, the defendant signed a CIA security exit form that contained the following language: "I give my assurance that there is no classified material in my possession, custody, or control at this time." The CIA terminated the defendant's security clearance upon his departure from government service.

6. In or about July 2007, the defendant began working in Hong Kong for a large international tobacco company. This company terminated the defendant in or about June 2009. He continued to receive salary payments from it until in or about May 2010.

7. In or about June 2009, the defendant and a business associate began discussing the formation of a new business. This business associate was a former Hong Kong police officer, who, as the defendant well knew, had close ties to the PRC's Ministry of State Security ("MSS"). The MSS is a PRC intelligence service that handles

2

civilian intelligence collection and is responsible for counter-intelligence and foreign
intelligence, as well as political security within the PRC.   The stated purpose of the
company was to serve as an intermediary between foreign tobacco companies and
China's State Tobacco Monopoly Administration ("STMA").

8.      On April 13, 2010, while in Hong Kong, the defendant applied online to
the CIA for re-employment.

9.      On April 26, 2010, the defendant and the business associate traveled from
Hong Kong to Shenzhen, China to attend a private dinner.   Present at the dinner were
persons whom the defendant understood to be MSS Chinese intelligence officers ("IOs").
During the dinner, the Chinese IOs excused the defendant's business associate and then
offered to compensate the defendant in exchange for national defense information from
his time as a CIA case officer.   The IOs told the defendant that they had prepared a gift
of $100,000 cash and that they would take care of him "for life" in exchange for his
cooperation.

10.      On May 11, 2010, while overseas, the defendant met with a former CIA
colleague and reported that he had been approached by two IOs at a conference, which
was false.   The defendant also failed to reveal the IOs' request for information as well as
their offers to give him $100,000 and take care of him for life.

11.      Sometime in or about May 2010, the defendant began receiving a series
of written requests for information (taskings) from the IOs.   The majority of the taskings
asked the defendant to reveal sensitive information about the CIA, including national
defense information.   The taskings continued into at least 2011.

3

    a. During 2012, the defendant had a series of interviews with the CIA.   All

of these interviews occurred within the Eastern District of Virginia.

Throughout these interviews, in response to questions about what the

IOs had wanted from him, the defendant intentionally failed to disclose

that he had received taskings from the IOs.

    b. In May 2013, during an interview with Special Agents of the FBI, the

defendant admitted that he had received taskings.   He described the

taskings but stated that he had not kept the written requests because they

would tend to incriminate him.

12.     On May 14, 2010, the defendant made or caused to be made into his

personal bank account in Hong Kong a cash deposit of $138,000 HKD (approximately

$17,468 USD).   This would be the first of hundreds of thousands of dollars (USD

equivalent) in cash deposits the defendant made or caused to be made into his personal

HSBC account from this date through December 2013.   Throughout the year prior to this

initial cash deposit on May 14, 2010, the defendant had not made any comparable cash

deposits into this HSBC account.

13.     On May 26, 2010, in Hong Kong, the defendant created on his laptop

computer a document that described, inter alia, certain locations to which the CIA would

assign officers with certain identified experience, as well as the particular location and

timeframe of a sensitive CIA operation.   After the defendant created this document, he

transferred it on an unknown date from his laptop to a thumb drive.

    a. On August 13, 2012, the FBI conducted a court-authorized search of a

hotel room in Honolulu, Hawaii registered in the defendant's name.

4

The defendant was renting this hotel room while relocating with his family from Hong Kong to the Eastern District of Virginia.   The search revealed that the defendant possessed the thumb drive within his personal luggage.   The FBI forensically imaged the thumb drive and later located the document in the unallocated space of the thumb drive, meaning that it had been deleted.

b.   When confronted with this document by Special Agents of the FBI during an interview on May 22, 2013, the defendant falsely denied that he possessed it, claimed not to know who created it, and denied knowing why it would have been on his computer.   He also denied deleting the document.

c.   In a subsequent FBI interview on May 28, 2013, the defendant admitted that he created the document in response to two taskings from the IOs and transferred it to a thumb drive.   He also said he thought about giving it to the IOs but never did.   A U.S. government official with original classification authority later determined that the information the defendant included in this document was national defense information of the United States that was classified at the Secret level.

14.   In or about June 2010, the defendant and his business associate registered a company, FTM International ("FTM").   Bank records later revealed that FTM had de minimis legitimate business.   By in or about December 2011, the defendant had sold his stake in FTM for a nominal sum ($1 Hong Kong Dollar per share).

15.     In or about summer of 2010, the precise date being unknown, in response
to a tasking from the IOs, the defendant drew a sketch of the floor plan of a particular
CIA facility located abroad, which was no longer in use.   The defendant never disclosed
this tasking or the sketch he created during the 2012 CIA interviews.

      a.   On May 31, 2013, during an interview with Special Agents of the FBI,
the defendant admitted that he created the drawing.   He stated that he
tore it up, threw it away, and never gave it to the IOs.

16.     On March 8, 2012, during the first of the CIA interviews described in
paragraph 11, the defendant falsely stated that he had not traveled to mainland China for
approximately two years so as not to give the IOs a chance to talk to him.

      a.   As late as December 7, 2012, the defendant continued to falsely tell the
CIA interviewers that he had not been to mainland China since being
approached by the IOs in April 2010, when in fact, by this time, he had
traveled into mainland China on two separate occasions.

17.     On April 22, 2012, a Yahoo! email account was created from an IP
address that resolved to Guangzhou, China.   The account's user name related to one of
the defendant's close family members.

      a.   During a 2013 FBI interview, the defendant disclosed that he had
received several email accounts from the IOs.   The defendant stated that
he could not remember any of the other accounts but that he could
remember this account because of the connection to the close family
member.

6

18.     On August 13, 2012, the FBI conducted the court-authorized search referenced in paragraph 13.   In addition to the thumb drive described above, that search revealed the defendant possessed within his personal luggage a 2002 Day Planner and an address book.   The two books contained handwritten notes made by the defendant, including personal information such as banking and password information.   The preponderance of the notes related to his work as a CIA case officer prior to 2004. These notes included, among other things, intelligence provided by CIA assets, true names of assets, operational meeting locations and phone numbers, and information about covert facilities.   As the defendant well knew, many of these entries were classified up to the Secret level and contained national defense information of the United States.

19.     On February 9, 2013, an email was posted in the email account described in paragraph 17.   The subject of the email was "How's christina?"   The message read:

> "Long time no see, How's christina's grade book ?
>
> We have not seen her recent grade book for a few months, maybe [sic] little girl always like changing her mind."

The account had been accessed from China.   The government is not alleging that the defendant accessed this account.

20.     On January 15, 2018, during an interview with Special Agents of the FBI, in Queens, New York, the defendant falsely denied that he ever kept any work-related notes at home.   When shown a photocopy of the front covers of the notebooks described above, as well as a copy of his handwriting therein, the defendant falsely denied that he possessed the notebooks while transiting through Hawaii in August 2012.   The defendant falsely denied that either of the books contained notes from asset meetings but conceded

7

that any such notes would be classified.   The defendant also falsely denied that he ever

put the document described in paragraph 13 on a thumb drive, notwithstanding the fact

that he had admitted having done so when he was interviewed by FBI agents on May 28,

2013.   Finally, he also falsely told the interviewing agents that in drafting this document

he was writing down things "more [like] a diary thing," notwithstanding the fact that on

May 28, 2013, he had told FBI agents that he had created the document in response to

two taskings from the Chinese IOs.

     21.    This statement of facts includes those facts necessary to support the plea

agreement between the defendant and the United States.   It does not include each and

every fact known to the defendant or to the United States, and it is not intended to be a

full enumeration of all of the facts surrounding the defendant's case.

     22.    The actions of the defendant, as recounted above, were in all respects

knowing and deliberate, and were not committed by mistake, accident, or other innocent

reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: *April 30, 2019*     By: _____
                        W. Neil Hammerstrom, Jr.
                        Assistant United States Attorney

_____     _____
Adam L. Small                     Patrick T. Murphy
Trial Attorney                     Trial Attorney
United States Department of Justice     United States Department of Justice

8

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Jerry Chun Shing Lee, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Jerry Chun Shing Lee
Defendant

I am defendant Jerry Chun Shing Lee's attorney.   I have carefully reviewed the above Statement of Facts with him.   To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Edward B. MacMahon, Jr.
Counsel for the Defendant

_____
Nina J. Ginsburg
Counsel for Defendant